Fry, J.
delivered the opinion of the Court.
The first question presented, in this case, is the true meaning of the act of the 28th February 1846, <§> 5.
It is the act imposing taxes for the year; and the part to be construed is as follows : “ There shall be levied, collected, and paid, on all yearly income, in money, accruing to each individual, during the period above mentioned, over and above the sum of 400 dollars, in consideration of the discharge of any office, or employment in the service of this Commonwealth, or in the service of any body politic or corporate, joint stock company, or otherwise, or in the employment of any company, co-partnership, individual or individuals, (except such as are exempted by law from taxation,) onecer centum on the amount of such excess of income.”
The plaintiff in error was allowed and paid, by the congregation of the First Presbyterian Church in Richmond, the sum of 1500 dollars, for his services as the pastor or religious instructor of that congregation, for the year 1845. And the question is, was this sum taxable, as income, within the meaning and intent of the clause aforesaid ?
Let us examine its words particularly. The income is to accrue in consideration of discharging “some office or employment in the service of the Commonwealth, or, in the service of any body politic or corporate, or joint stock company, or in the employment of any company, copartnership, individual or individuals.”
The latter part of this sentence, only, can apply to the case. It was not argued or supposed, that the words “company” or “copartnership,” could be applied to the congregation of a church.
*647 Was the plaintiff, then, as the pastor, or religious instructor, of the said congregation, in the “ employment” of an individual or individuals,” in the sense of the act ?
Before proceeding further, I refer to some rules of construction, as applicable to the matter before us. 1. “ The words of a statute are to be taken in their ordinary and familiar signification and import, and regard is to be had to their general and popular use ; for jus et norma loquendi, is governed by usage ; and the meaning of words, spoken or written, ought to be allowed to be as it has constantly been taken : loquendum est ut vulgus.” Dwar. Stat. 702.
2. “ It is a well settled rule of law, that every charge upon the subject must be imposed by clear and unambiguous language. Acts of Parliament, which impose a duty upon the public, will be critically construed with reference to the particular language in which they are expressed. When there is any ambiguity found, the construction must be in favour of the public ; because it is a general rule, that where the public are to be charged with a burden, the intention of the Legislature to impose that burden, must be explicitly and distinctly shewn.” Dwar. Stat. 709.
3. A penal law is not to be extended by construction : and revenue laws are of that character. In like manner, in the revenue laws, when clauses, inflicting pains and penalties, are ambiguously or obscurely worded, the interpretation is ever in favour of the subject; “ for this plain reason,” said Heath. Justice, in Hubbard v. Johnston, “ that the Legislature is ever at hand to explain its own meaning, and to express more clearly what has been obscurely expressed.” Dwar. Stat. 737, 743.
To return now to the language of the act before us.
I think the Legislature had reference only to secular “employments” or business. All the preceding words used, refer to such business only. Such is the import of “joint stock company, company, and copartnership.”
*648 The terms, “ individual or individuals,” were used by way °f distinction from “companies and copartnerships.” “ Employment” is used in connexion with all the terms, in the same sentence; and with “individual or individuals,” ought to be construed as ejusdem generis, with the other subjects of taxation and persons, in the same connexion ?
Again. Was the pastor of the First Presbyterian Church in the “ employment” of A, B, C, and D, of his congregation? Employment means “business.” Was he acting in the “ business” of the individuals of his congregation? It seems to me a departure from every ordinary use of the terms. We are not wont to speak of a minister of the gospel, as in the “ business” or “ employment” of the “individuals” of his church; nor in the “business” or “employment” of his congregation. He is not their servant, at least in any secular sense. He is the servant, only, of the Master, in whose name he ministers. He does his own work, not that of the congregation.
In Virginia, the congregation of a church is a body not known to the law. At least, they are held to be too uncertain to be the objects of a devise. Did the Legislature have in mind these congregations by using the words “individual or individuals?” Was it meant to hunt them up, to ascertain every person composing them, and the sum he paid to his clergyman ? For this may be done, and ought to be done by the commissioner, if ■the clergyman should give either no account, or an untrue one, of his receipts ; os from death, or other cause, the account could not be furnished.
If the Legislature had congregations of churches in mind, as employers, it seems to me they would have used the term itself. They would not have embraced them by indirection; calling them “individuals;” implying and authorizing an inquisition into all the members of a church, and the sum or sums each man pays *649 for the support of his pastor; and in some cases, perhaps, imposing the necessity of such inquisition.
Against this construction of the act, I perceive nothing of any plausible force, but what arises from the exemption in words, of the clergy, in a former act, and the omission of the words of exemption in the present act.
But the tax laws are merely annual. They expire with the year. Each act is complete in itself, and has reference to none preceding.
If we look to the history of our legislation, we sometimes find provisos which were unnecessary. They sometimes except matters not falling within the enacting clause.
The acts of 1842-3, 1843-4, did not contain the exemption. It was added in 1844-5, and again omitted in 1845-6.
The exception was first added perhaps, ex abundante cautela. Some doubts may have been suggested of the meaning of the first acts; the exception then added from abundant caution, and finally omitted, because it was deemed really unnecessary to qualify the words which were used.
I.think this more probably the reason for the omission, than any intent to tax clergymen or congregations. For if they had designed the latter, they would not have left the very doubtful words remaining, and which, to the present moment, have been variously acted upon, we are told, in different parts of the Commonwealth. They would have enumerated congregations among the companies mentioned; and among the employments or business from which income is derived, they would have named the functions or labours of the minister.
I have forborne to enquire whether the voluntary rewards or contributions made by congregations to their clergymen, could properly be considered as “ income,” within the meaning of the act. Having determined that congregations are not employers, nor clergymen in the *650 business or employment of their congregations, in the sense of the act, it becomes unnecessary.
I have forborne also to say any thing on the constitutional question so ably discussed at the bar, for the same reason. Such a question should not be entered upon unless it becomes proper and necessary for the decision of the case.
Scott and M’ Comas, J’s dissented.
Judgment reversed.